We will hear ICBC v. Blacksand specific. Good morning, may it please the court, my name is Virginia Tent, I'm here on behalf of Defendant Counter Claimant Appellant, the Blacksand specific group. In this case, the District Court improperly invoked procedural rules in a rush to rule against Blacksand, the non-moving party on a motion for summary judgment. First in a technical ruling under Rule 56D, a rule that ordinarily goes to request for additional discovery in advance of a decision on summary judgment, the District Court improperly refused Blacksand's any discovery whatsoever on the claim against it or on its defenses. It was not a note, it was a bridge loan agreement that contained obligations on both the part of Blacksand and the lender. Did you agree to construe it as a note when you conceded that it met the requirements of the CPLR? The agreement was that it was an instrument for the payment of money, not for the payment of money only. The language in the guarantee portion of the agreement is pretty unconditional. The guarantor hereby absolutely unconditionally and irrevocably guarantees to the lender the prompt payment and full rendezvous of the obligations by language of the guarantee. It is a very sweeping guarantee. We've also submitted evidence that the guarantee was boilerplate, that it was not negotiated. I think that it is in serious tension with the provision in Section 10.11. Weren't the parties sophisticated? That is, I don't think, a matter of record. Did Latham represent this? We did not. Who did he represent? I apologize, I do not remember the name of the law firm below. I believe it's Hornstein-Wexler. But you were all, as Jacob said, hard to think of more sophisticated parties that could protect each other. I mean to protect yourselves. I understand the frustration. I think that it helps to look at the rationale for the state cases in the Platt-Penger line. Which defenses do you think could possibly survive the language that Judge Levinson just read to you? I think that that language does not address with any specificity whether the lender was agreeing to Section 10.11 with its fingers crossed behind its back. I think that... I don't know what that means. It weighs everything I can think of. I mean, but you do have a good faith negotiation with the language that's still alive, right? That's correct. So if you win on that, you get money. That is right. Right? Sorry? That is possible. I mean, you have a party on the other table, on the other side, whose solvency is beyond doubt, right? I believe so. Right. So why isn't Judge Kaplan's resolution to this simply giving both of you what you agreed to do? You know, I think that in the first instance, because the waiver language did not touch with any specificity on whether the lender was fraudulently signing Section 10.11. To waive that. I understand. The other reason, I think, is that the breach of Section 10.11 by ICBC was what caused the default on BlackSand's part. And I think that it is a very longstanding principle of law that a party cannot benefit from a provision that it has caused to be… Well, why do you think you're entitled to hold on to this money while you litigate for two or three years in light of what you saw? I don't know that there's a good answer to that, whether which side should hold on to the money, that possession sort of as it is at the moment when litigation commences. I don't know of any clear direction as to how that should… But you waived all these defenses. This is as broad a waiver language as one could imagine. If you didn't want to do it, you didn't have to sign the document. They probably wouldn't have given you the money. But you signed it, you got the money, and now you're doing exactly what you promised you wouldn't do as a condition when you were trying to get their money. Exactly what you promised you wouldn't do. I would submit that ICBC is doing the exact same thing by promising to negotiate in good faith and then not having any intention to do so. So how are you prejudiced? If you can prove any of that with respect to good faith, you'll get a judgment which you can collect. With discovery, I think that is possible. So how are you prejudiced? Why are you here? Because I believe that the counterclaim and the claim should have been decided together in that certification of the judgment on ICBC's claim was premature, given that both the claim and the counterclaim involve breaches of the same agreement, the bridge loan agreement. Didn't Judge Kaplan do a big favor to both sides? Because now you know what you've got to litigate. You have a roadmap for focus rather than expansive discovery. You can take into account your good faith, no good faith negotiation defense as far as you can. I don't think my client views it as a gift from Judge Kaplan. I think that it's very disturbing that my client was not allowed any discovery on whether ICBC caused the default, which would mean that— But you waived that. That was waived. In a boilerplate provision that would, if you interpret it that way, would condone fraud on the part of the lender. This is not a retail consumer agreement. This is an agreement that is part of a significant financing among highly sophisticated people. So the notion that you're telling us that entities like Black Sands are victimized by boilerplate, I mean, it doesn't ring true. We hear these commercial disputes all the time. There's no there there as far as I'm concerned. I think that it helps to look at this court's decision in Manufacturers Hanover Trust v. Yanakis, which says that when it comes to disclaimers, the touchstone is specificity. And the waiver in this case is—it is incredibly sweeping in its language. And it is— Upon some. It was—I take it early. I don't believe that's actually part of the record. Okay. Well, you reserved rebuttal. So here we go. Good morning, Your Honor. May it please the Court, Paul Hessler on behalf of the appellee in this case. I only have a couple of very brief points, which is, one, with respect to the waiver of defenses here, I think the language of the agreement is crystal clear. In addition to the disclaimers of any defenses whatsoever relating to even the validity of the guarantee, there is a specific disclaimer of the potential breach of Section 10.11, which has been alleged by the appellant and which remains pending before Judge Kaplan, and that's in Section 9.2e of the agreement. Do I understand that if you prevail, that does not preclude your adversaries from pursuing a Type 2 contract claim that your client breached a duty to negotiate in good faith toward some other agreement? It absolutely does not. That claim remains pending as we speak before Judge Kaplan, and a conference is scheduled tomorrow with respect to that claim. So that goes forward. I take it your client's not in the big rush with respect to the $5 million, because if you win, interest is running at 9%, which is a lot better than you can do anywhere else. Well, that's true. It has been two years plus since the maturity date, since the appellant guaranteed. That's a million bucks. I'm sorry? That's a million bucks. It is a million dollars. It's been accruing. We like the interest, but by the same token, we have books to close, and we are long overdue on collecting on an unequivocal guarantee. So with that, Your Honor, there were some points raised about boilerplate, which I think this Court's decisions recognize that this is not. This is a 50-page loan agreement. There are 12 pages of definitions tailored to the precise loan and financing between the parties. Can you address the relevance of the anarchists? So the anarchists, I think, Your Honors, points out three distinctions between waivers that are construed to waive all defenses and waivers that are construed not to waive all defenses. One is, is the agreement boilerplate? Has it been negotiated? The agreement in this case, in the record, shows unequivocally that in the agreement, the guarantor represented that it was represented by counsel and that its counsel negotiated all provisions of the agreement and had a chance to review them, and it did that twice in the agreement. I point Your Honors to those. Those are Section 1.6 on page 847 of the appendix and in Section 10.15 on page 79 of the appendix. And this agreement is a multimillion-dollar agreement between very sophisticated parties where the parties admitted in the agreement that it was the subject of negotiation. So it's not boilerplate. The second issue in eunuchus was whether the guarantee contained the disclaimers to the validity of the guarantee itself. This one does in multiple ways. It does so expressly. It says that it's absolutely unconditional, notwithstanding anything, any circumstance that could otherwise constitute a defense either to the underlying obligations or to the guarantee itself. And finally, in eunuchus, there was no—the Court pointed to whether there was a blanket disclaimer of any other circumstance which might otherwise constitute a defense to the guarantee, which we also have here. And again, in Section 9.2e, there is a waiver. The guarantee says that it also excludes as a defense any act or omission carried out in respect of any provision of this agreement or any other loan document. So even if there was a duty to negotiate in good faith and there was an omission in connection with that, it's particularly carved out as a defense by Section 9.2e of the agreement as well. So, Your Honors, we don't think there's any question as to the enforceability immediately of this guarantee. We think that if this guarantee is not immediately enforceable and does not waive all defenses, then we're hard-pressed to figure out how to write one that would, especially in light of the fact that there was an additional agreement layered on top of all the waivers that this could be enforced under CPLR 3213, which provides for summary proceedings in which, by definition, there are no defenses to the payment of the note. Let me ask you this. Why is Judge Kaplan entitled to refashion the rules of civil procedure? I mean, no discovery here. There's a certification. So, Judge Parker, we think Judge Kaplan, in fact, followed civil procedure to a T. Putting aside the issue under 56D, the fact is a party is only entitled to discovery when discovery is essential or is required to give that party access to something essential to oppose the summary judgment motion. Here, there are no defenses whatsoever to this guarantee, and discovery would serve no purpose in advancing the court's consideration of the summary judgment motion. So, based on that fact alone, in fact, all the cases that the appellant cites where discovery was allowed, say very clearly that discovery is allowed where a party needs access to facts essential to justify its defense. Here, there are no defenses. And they have to say what those facts are and how the discovery will advance that. I think that's precisely right. Rule 56D, they draw a distinction between cases in which additional discovery is required as opposed to cases in which discovery is not started. The rule doesn't refer to that distinction, and we think here where there are no defenses and there are no facts that could be relevant to the determination, that the judge correctly decided that no discovery was necessary. Thank you. We'll hear from Bob. Thank you, Your Honors. Thank you. If I could start with the last point, I think that even in state court, in cases proceeding under 3213, that the courts do allow limited discovery to determine whether the debt is one that is enforceable. And in this case, there has been evidence submitted. In state court, that provision permits you to proceed, does it not, by notice of summary judgment in lieu of a complaint? If you were in state court, yes. And then when you were moved to the federal court, the federal rules apply. But that state court procedure is, by definition, one applicable to a proceeding where there are no genuine issues of material fact contested, is it? This court held in ComTech Communications Technologies v. Wireless Data Systems that once a case has been removed to federal court that it's the federal rules that apply and that state court arguments under the CPLR do not have any place. Did you say what discovery you want? Yes. We would like discovery regarding the negotiation of the bridge loan agreement, particularly Articles 9 and 10, which contain the guarantee and the agreement to negotiate. What does that mean, discovery concerning the negotiation? To determine whether, in fact, they were negotiated, whether the entire bridge loan agreement is simply a form. Your client's lawyers could tell you that. You said you weren't involved. Did you just ask the lawyer? That's a very practical suggestion. That sounds frivolous. It sounds like you're just jarring. I think that discovery regarding the timing of ICBC's decision not to provide Black Sands with drafts of the revolver agreement would be useful in knowing whether— That's the other agreement. That's the one that you allege they are deemed— they are required to negotiate in good faith, correct? Under Section 10.11 of the bridge loan agreement. That's still there. You can still litigate that. That's how I understand it. Your adversary doesn't seem to see a problem with it, and I wouldn't think you do either. I think that the question of whether the lender intended to perform is one that is exclusively within its purview. It gave you the money. That would seem to be the performance that's contemplated within the four corners of the bridge loan agreement. That is a performance of one obligation, the other obligation being to negotiate in good faith, which it did not perform. But you can still take discovery on that. I submit that discovery should have taken place before summary judgment was decided, since both of the claims turn on this single agreement and on the facts and circumstances surrounding it. Thank you. Thank you both.